Good morning. The first case for argument this morning is Laura Torres v. Ashcroft. Judge Moskowitz, are you on the telephone? I am. All right. We have Judge Moskowitz in San Diego on the telephone, and of course Judge Wallace and I here, and you may proceed. Thank you very much, Your Honor. Mark Vanderhout on behalf of petitioners who are present in court today, and I want to thank the court for accommodating my travel schedule and reschedule. No problem. We're happy to do that when we can. Thank you very much. This case is about a husband and wife who have lived in the United States for approximately 15 years each, who have an 11-year-old United States citizen daughter, have led a crime-free, productive lives in the United States, and now face permanent banishment from this country due to the ineffective assistance of counsel they received from their prior attorney. This is a consolidation of three separate cases. One petition involves a direct appeal of the underlying immigration judge decision, where for the third time the Board of Immigration Appeals has failed to serve petitioners with its decision. But for the purposes of the argument today, I'd like to concentrate, because that's pretty straightforward, I'd like to concentrate on the ineffective assistance of counsel claims, which are contained in the petitions for review of the denial by the Board of Immigration Appeals of the motion to reopen and the motion to reconsider. And essentially those cases combined hold that the prior attorney acted reasonably and made a tactical decision in his advice to the petitioners in this case. We think the Board of Immigration Appeals was wrong in that for three separate reasons, that there were three separate instances of ineffective assistance of counsel, any one of which alone would require reversal of the Board of Immigration Appeals decision. In your statement just then, did you refer to these tactical decisions? I said the Board of Immigration Appeals referred to that as a tactical decision, but we think the decision is unsupported by the evidence, completely contradicted by the evidence of record. If the Board makes a finding on that regard, what is the burden of your client to demonstrate before we'll tip over that factual determination by the Board? Well, the Board makes, Your Honor, I believe this is really a mixed question of fact and law, because the Board's conclusion is that there wasn't ineffective assistance of counsel. No, no, I'm not referring to that. Go back with me, please. Okay. The Board made a determination that was a tactical decision. That's a factual determination based upon what the lawyer did. What is the responsibility of your client in order for us to tip over that factual determination that it was a tactical decision? The burden of proof would be on our client, Your Honor, my client, Your Honor. To show what? To show that there was unreasonable action on their part, on the attorney's part, which fundamentally deprived them of their right to apply for permanent residence. Now, my understanding of the Supreme Court case is once the Board makes a factual determination, we must be compelled to change that factual determination. It isn't just proving something like clearly erroneous that we have with a far, far greater responsibility that your client has. Do you agree with that law that that is your burden? I agree if it's a pure factual determination, Your Honor, but I would differ with you slightly in the respect that I do think the conclusion of whether or not there's a tactical decision made is not a pure question of fact. It's a mixed question of fact and law. On what case do you rely that a lawyer makes a decision in his head that he should do X? In what way is that a legal conclusion? Well, it's a legal conclusion, Your Honor, because the lawyer has to make a decision based on the facts presented to him in this case of what the best strategy may be and what advice he's giving. And we assert that the record shows that he did not inform his clients properly of the state of the law. Now, the reason I say it's a mixed question of fact and law is because there could be some disagreement on what the state of the law is, and so that is also a legal determination. But if it's a purely factual issue, and, Your Honor, for the sake of argument, even assuming that there needs to be a conclusion that no reasonable fact finder could support the board's conclusion, we believe we have shown that and we think the record supports that, and I'll explain why under either scenario. I wondered if you had a case that you could cite to us that a finding of a tactical decision by a lawyer is anything other than a finding of fact by the board. Do you have such a case? I don't have such a case, Your Honor, but I believe that Strickland v. Washington, I believe the sources and... I just want to make sure. I assume that there's different things going on here, of course. If, for example, the lawyer said the effective date of IRAIRA is 2001,  Correct, Your Honor. I guess you're also saying maybe that's a mistake of fact, but... Well, but that's one kind of mistake a lawyer could make. But a lawyer could also make a mistake, and that is, I'm generally familiar with the law, so I think if I could rush through this application, things might work out for my client. Would you agree that would be a tactical decision? I'm generally familiar with the law. Well, you know, I know the law, but I'm telling you I think we can rush this through. I think this will work out for you if we try it this way. If there was a reasonable basis for that, yes, that would be a tactical decision. But I'd like to point out, too, that one of the things that the attorney has to do is explain to his clients his reasoning, his advice, and they have to make an informed decision. And that was one of the things that he did not do here. But let me go through, if I can, the three... Okay, but before you get to that, I have a question that I need to get answered. Okay. Having to do with due process and ineffective assistance at counsel, because some of the briefs and the discussions mix and match our criminal cases and Strickland, which is our Sixth Amendment right to counsel, which you don't have here, with the Fifth Amendment due process. Correct. In this case, as I understand it, the lawyer gives certain advice and takes certain actions in connection with filing the papers. Is that kind of a fair summary? That's correct, or fails to give certain advice, as we assert. Right. But at this point, there's no proceeding, correct? That's correct. They have gone to them for advice on how to apply for permanent residency, and his actions lead to them to be put into deportation proceedings. Right. So my question then becomes, if all of those events take place outside of an actual proceeding, what is your best authority for how we evaluate your ineffective assistance at counsel claim? Because it's not really taking place. It's not something that the government hasn't done anything, for example. Only the lawyer has done something. Correct, Your Honor. That would be similar to Castillo-Perez, where the attorney failed to file an application. There was no wrongdoing on behalf of the government. By Rodriguez-Larris, which you said in our briefs, where the attorney also failed to take proper action and was subject to the regulatory bar. Those were both ineffective assistance at counsel claims. There was no misconduct on the part of the government. But this court and several other courts have held, and the Board of Immigration Appeals itself, has held that the action of counsel alone can comprise ineffective assistance of counsel and therefore a due process violation if it deprives the client, in this case petitioners here, of their opportunity to perfect their application for, in this case, permanent residency. And that's what happened here. That's what happened in Castillo-Perez. In each one of those cases, there was a proceeding that had been instituted. Isn't that correct? In those proceedings, there has been one. In one of them, actually, in Rodriguez-Larris, the proceeding was over and it was a motion to reopen. And so the individual did not – there wasn't a proceeding going on there. There was a failure to properly act in a timely fashion to reopen. But it was all after a notice to appear or an order to show cause and a determination whether the person should actually be deported. It wasn't pre-initiation of the proceedings by the Immigration and Naturalization Service. Is that correct? That is correct. But there doesn't need to be a deportation proceeding in order for due process to attach to the advice of counsel. But isn't the whole idea of the right to effective assistance of counsel in the immigration proceeding that it deals with the adversary nature of the proceeding and whether the proceeding was fair and we can rely upon the outcome? Isn't that the whole idea? Well, that's one aspect of it, Your Honor. But also, if an individual goes to an attorney and that attorney tells them that they can do X and they're put into a deportation proceeding and deported as a result of that and they can't apply for the X, in this case the permanent residency, then under the Board of Immigration Appeals Decision Lozado and under certain cases in this Court, that person has been deprived of their right to apply for permanent residency and they're being denied then effective assistance of counsel and due process. There are many... Normally, when you switch from normal right to counsel where you have a freestanding obligation to get reasonable advice to the due process, the due process means that someone, not the lawyer, has deprived you of the due process and the proceeding, that is, the BIA, the judge, whomever, doesn't it? No, Your Honor. Your Honor, not necessarily as this Court has said and the Board of Immigration Appeals admits in Lozado. The government can be fault-free and the actions of the attorney, if they deprive the individual ultimately of their ability to apply for a benefit, can constitute due process violation. Castillo-Perez was that situation. But isn't it in connection with the proceeding? I mean, that's what I'm trying to figure out. If you have any case where the court would hold, as we would have to do here, that prior to the initiation of any proceeding, the advice to your client, which was inappropriate, results in a deprivation of due process once they get in the proceedings. Do we have a case that says that? Well, you have the right under the regulations to counsel at every stage of the proceedings, including the advice prior to initiation of proceedings. So the right to counsel? Not appointed counsel, but the right to be represented by counsel. Right. But you don't – but when we talk about right to a counsel, we tend to think of that in the Sixth Amendment. In other words, you may be represented. The right to be represented. You may have a representative. Correct. Not appointed or paid counsel, but the right to be represented, the right to counsel. And the cases talk about the right to counsel and the importance of counsel. The case, as a matter of fact, out of this circuit, the Malchoris-Munoz case, talks about the role of the attorney being very important because they have to explain the entire process to the individual. They have to explain what their rights are, what their options are. And here he completely failed to do that. And if I could try to at least elucidate the three instances where he failed to do that before I – Okay, let me just say, and I know that you want to elucidate those. We've read the briefs, and I think we understand the bad legal advice, okay? Okay. We're having trouble fitting the bad legal advice, which is really, you know, perhaps inexcusable and unfortunate. We're trying to fit it into a legal construct. So stick with us and help us out, all right? Fine. I'll be happy to do that. May I ask you so I can put it in context? Sure. What is your position that the lawyer should have done? What the lawyer should have done is tell the individual that we can't file for asylum now because there would be zero chance you could qualify for suspension of deportation. Right. He shouldn't have told them that you could accumulate your time for cancellation of removal, in other words, get the 10 years once you're in proceedings. That was wrong as a matter of the statute completely said. In what he did that was wrong, I'm asking the simple question, what should he have told them? He should have told them to wait one year, file your application at that point in time. If your asylum application is denied, then you can apply for permanent residence in a deportation proceeding. That's what the proper advice would have been. But in that case, isn't he essentially telling his client to continue to violate the law by staying here illegally? Could you repeat that question, please? We didn't quite get the whole question. Sure. Isn't the lawyer then essentially telling his client to violate the law by remaining here illegally? It's not telling him to violate the law, Your Honor. The statute specifically says that if you're in the United States illegally for, it was several years, and then 10 years, and you remain in the United States illegally, then you can obtain permanent residency based on your 10 years here. So the statute, Congress said, stay in the United States illegally for 10 years, come forward to us and you can apply for permanent residency. I think Judge Moskowitz's question is the same one that I have. No matter how you cut it, you're going to tell these people who are here illegally that what you should do, based on my advice as a lawyer, is to remain in your illegal status for a certain period of time so you can get certain benefits. And your position is that as an officer of the court, you should tell people to continue to break the law so that they can get a benefit later. I phrase it a little differently, Your Honor. That's the advice that our law says is appropriate, right? Well, Your Honor, in fact it is, and I'll explain why. Congress said, stay here illegally for 10 years and we'll give you a benefit. Congress said that. Now, we may disagree politically. That's different from telling a lawyer, an officer of the court, telling people to continue to break the law. You want him to advise them to continue to break the law because you can get a benefit later. That's like saying there's a statute of limitations on murder. Continue to dodge the bullet and you can get by. Well, I respectfully disagree with that, Your Honor. Is that what the lawyer should have done? The lawyer should have done that, Your Honor. That's correct. But I don't think that's a violation of ethics. I don't think it's a violation of law, and nor do I think it's a violation of law that the clients are doing. Congress has said. If a lawyer feels that the lawyer should not advise people to break the law, then the lawyer has to come up with some different scenario. And what you're saying is that he can't come up with a different scenario. He has to advise them to break the law. I'm not arguing the ethics of it. What I'm saying is you say he must do this, and the question is in my mind, why is a lawyer required to advise their clients as an officer of the court to continue to break the law? What the lawyer is obligated to do under Strickland v. Washington and under all the other cases is properly advise the client of the law and the consequence of taking various actions. And what he should have done is say, you can't qualify for suspension of deportation because you don't have the seven years and we can't get you in proceedings before April 1st. He should have said, you can't apply now because you'll be ineligible for cancellation of removal because the clock stops ticking when you're 10 years, when you are put in proceedings. And if the only thing we could do is try to overturn 50 years of Supreme Court precedent saying it's constitutional for the Supreme Court, for Congress to pass laws that are retroactive, and that's a losing proposition. So what he should have done is said, your other option, you've come to me for advice. And people come to me for advice all the time in this situation. And, yes, what I say is, Congress said, if you're here seven years, you're here 10 years, you can apply. You're six months short. Wait six months and apply. Because if you turn yourself in now, you're going to be deported with no relief. And, yes, I do believe that the attorney had the obligation to advise the client of that and they make an informed decision of that, and it was an effective decision of counsel not to do that. The client has to make that decision. You're not counseling someone to go break the law. You're advising the client of what the law is, the ramifications of their actions, and they have to make an informed decision. I believe it was ineffective of counsel not to do that. I'll save my time. Reserve. Good morning. May it please the Court. Russell Verbe, on behalf of Attorney General John Ashcroft. The case presents two questions. First, whether these petitioners suffered at the hands of ineffective counsel, and second, whether the relief they seek is something this Court can award. Admittedly, they were not in proceedings in January of 1997 when this particular piece of advice was given, and it's doubtful, thus, whether the Fifth Amendment due process concerns were triggered in this case. But even so, the advice, the government feels, does not constitute ineffective assistance of counsel. In January 1997, when the petitioners consulted with their former counsel, there was considerable uncertainty as to how the 1997 changes to the law were going to play out. The declarations revealed that former counsel fully understood that suspension of deportation was going to be repealed and that cancellation of removal would replace it, and thus we'd have to have ten years versus seven years of physical presence. But if you look at page 25 of the record, and you can take all of that with the declarations and letters we have, you can see that what former counsel was working on was a theory that if a person were to reveal their presence to the service by filing an application for relief, they were, in essence, unilaterally placing themselves in proceedings and thus guaranteeing them protection against the effects of the stop-time rule. That was the theory presented to the immigration judge. That theory has been proven wrong over time. We now know that the stop-time rule applies to both transitional deportation proceedings as well as removal proceedings, and we also know from Ramir Zabala, a case that was recently handed down by this Court, that an alien's efforts to put themselves under the old rules by filing affirmative applications or revealing their illegal presence don't have that effect. This advice, although it has been proven incorrect, was not unreasonable at the time, and it was not reckless to give this advice. So this is not ineffective assistance, and this Court's analysis can stop there. If we were to disagree with you, just hypothetically, on the effectiveness of that advice, do you agree with laboratories as counsel that that would trigger a Fifth Amendment due process claim? It would trigger if the advice, if the person was entitled to due process at the time, and if the advice turns out to be unreasonable or reckless, you then have to determine whether it impinged upon this person's proceedings, making it unfair, fundamentally unfair, and they have to actually show that there was some prejudice. There was some prejudice. But let's assume that, of course, the ultimate prejudice always in the immigration context is an order of deportation that might not have come about had different procedures been followed. So if there were prejudice and if that advice were reckless or inappropriate, I take it that the service agrees with laboratories as counsel that even though the initial advice was given outside of a proceeding, the fact that it led to a proceeding would at least put us within the Fifth Amendment? It would put us within the Fifth Amendment, but I don't think it gets them all the way home to relief. The problem is there's a big if in this case. The advice that was actually sought, or that Mr. Vanderhoof puts forth, is that you should go ahead and continue violating the law, go into hiding. And I don't think the Court wants to send that message out. And I'll leave that aside. It's already been flushed out. We agree that that is encouraging someone to violate the law. I'll just briefly state that the law does not encourage people to remain here for ten years. The cancellation law is there in recognition that if a person does remain here for ten years and they are removable, that they should at least be given some consideration as to what they have done in the past ten years with their life. It's a softening. It is not an encouragement or a carrot to have people stay here for ten years. I think it's two different ways to look at the same statute. Well, but don't you think it would be an attorney's advice to tell a client that right now it's seven years, but the law is changing, and in my view, when the law changes, you need ten years. And you won't qualify for ten years. But, Your Honor, at the same token, I think it's tough for a counsel to tell his client, but you go out and keep hiding. So what I'm going to do is I'm going to give you, you're here, you need some sort of help. I'm going to give you my best shot. And based on the way the law was drafted, it appeared that the suspension rule, that the stop time rule, would not apply in a deportation proceeding because the statute as drafted said, suspension of deportation, stop time rule, and I'm paraphrasing, does not apply to notices to appear. It didn't say orders to show cause. So he gave his clients the best shot he could without encouraging them to violate the law. The other thing is there's a big if in this case. How do we know that these petitioners would have been able to remain undetected for another year? Granted, they had made it eight and a half or so years, but there is a big if there. We can't say that this particular advice, if it was wrong, if it was unfortunate, was not the proximate cause of the prejudice in this case. They could have been found. They could have been placed in proceedings. There's a huge if. It's not had they gotten this advice, their outcome would have been different. That huge if intervenes and takes away a prejudice argument. And even if there had been the 10 years, that wouldn't necessarily put them hold free in terms of the other criteria that are required? Certainly not. There is a whole other issue here with regard to showing prima facie eligibility for relief. There has already been a finding that these are people of good moral character, and they haven't been convicted of crimes. I think that they're fine, upstanding people. But the other issue, they have made no effort to show that they're qualifying relative with suffer exceptional and usually extreme and exceptional hardship if there is a removal in this case. So there may not be a prima facie showing of eligibility for relief. I'm not saying that they have to absolutely show they would have gotten relief, but they have to at least make some effort to present to the board and to this court that prejudice is there because they're prima facie eligible, and they haven't done that. Suppose we disagree with you and believe that their due process rights have been violated. What relief is there that the court can give them? I don't think there is any relief at this point, Your Honor, because the problem is what they're asking for. They're not asking that they be placed in that they have suspension of deportation without concern for the stop time rule. They're asking for cancellation of removal without concern for a stop time rule, and that's a problem. Suspension of deportation existed in two forms, with a stop time rule, without a stop time rule. Cancellation of removal has only existed in one form, with a stop time rule, to create some sort of creature of judicial legislation, and I hate to say that. That's what they're asking for, a cancellation without concern for stop time rule. That doesn't exist, never has existed, and I don't think the court can grant that form of relief, nor can the court say take this case back and place them in deportation proceedings. That would violate Ramirez-Zavala, which says, in essence it says, once you are placed in removal proceedings, that's where you stay. Nothing you've done in the past can change where you go. In other words, we couldn't, the court you don't think has the authority in effect to restore them to where they were, now that they've filed these papers? To restore them where they were at which point is going to be the question, Your Honor. To restore them to a non-status, non-immigration proceedings, I don't think you can unring the bell and get them out of proceedings. I don't think the court has that power. That's a problem. That's the difficulty, one of the difficulties I'm having with your case. Assuming that there's been a due process violation, a case as a rather legion, that where there's a violation of the Constitution there must be a remedy, have any cases dealt with that issue where there's actually been a due process violation demonstrated where the courts have fashioned a remedy to put the people back to the place they would have been had there not been a due process violation? Obviously there have been cases and that's the goal is to put the person back where they are, almost to make whole type provision account. But in a unique situation like this where you're confined by prior case law and by the fact that these people were placed in a particular type of proceeding over another type of proceeding and the relief they're asking for never existed, it would have to be created a whole cloth, I don't think the court has the power to do that. And even by that, Your Honor, as I said earlier, I still don't think there is a due process violation, number one, because they weren't in proceedings, and number two, it's a near tactical decision, it's not. I understand your position and I'm not arguing about that. I'm asking you questions about another point. If their due process has been violated, is there some injunction that we can fashion against the government to provide them the opportunity of filing on a tenure? I'm not suggesting that, I don't even think that's a good idea. What I'd like to do is find out from you how other courts have fashioned this or how you believe it can be fashioned or whether there is any way, assuming a due process violation, whether there's any way that these people's constitutional rights, if they were violated, can be addressed. Well, Your Honor, obviously not giving any ground here. I'll say that a remedy I could see the court fashioning would be to put these people, remand this matter back to the BIA with instructions from an immigration judge, let them apply for asylum. They submitted an application for asylum. It wasn't frivolous. It can't be frivolous. They can at least go for that form of relief. That's the only form of relief really available to them at this point. They can't have cancellation because it's based on everything else. So there's no way we can overcome and import a stop time, as you see it. The only thing they could do would be file for asylum. Asylum, perhaps, Your Honor, or some sort of special form of adjustment, but there isn't one out there for them. Is there anything in the record to indicate they have any grounds for asylum? Well, other than the fact that they did apply for it at one time, Your Honor, and I would hate to think that a frivolous application was filed. That carries its own consequences, and I don't have any indication to believe that their application was frivolous. It may not have everything it needs to get them home, but at least they can apply for asylum. They're applying for some form of relief, which is all they would be able to do if you sent them back into a cancellation situation, is apply for relief. They're not necessarily entitled to it. But they can file for asylum regardless of what we do. They could apply for it today based on changed country conditions. Do they still have a pending application for asylum? No, they've withdrawn it, ma'am. They've withdrawn that. It seems to me that when you look at the remedy, it takes you back to this whole question of how broad is the Fifth Amendment because normally in the cases we've seen, the ineffective assistance of counsel does relate to the proceeding or failure to file on time. It's something that could be remedied within a proceeding. In other words, put them back, make it timely or make the board reopen or it actually invokes a proceeding as opposed to three forks in the road of advice. So it kind of gets us back to our original question of how do we define the Fifth Amendment right. And maybe I'll just ask you again. There were a couple of cases cited here, some of which by Laura Torres' counsel, some of which related to proceedings. But have we had situations where we determined that the prefiling advice was ineffective and therefore we did invoke the Fifth Amendment? Not that I have seen, Your Honor. Most cases, the trigger to the Fifth Amendment due process is the onset of proceedings. And if the advice to the tactical decision occurs in the context of proceeding, as in the Castillo-Perez, as in Ramirez-Lares, as in Terala, they were all ineffective assistance of counsel claims within the proceeding context where the Fifth Amendment due process right was triggered, as opposed to a Strickland v. Washington, which is a Sixth Amendment. It's a much greater, wider application of the protection afforded the petitioner. Well, I mean, one thing you could do to put them back where they were is to say, you know, had they been able to get through in that little window before the effective date, you know, is it basically to have that application adjudicated even though it didn't work out? That would be their asylum application. They never filed suspension. That's pretty much what I recommended, that if the court is so disposed to find out that everything has fallen against the government, that, you know, they've gone through all the hoops, there was Fifth Amendment, there was ineffective advice versus a tactical decision, that there was prejudice. If we make them whole, the best we can do is say, go ahead, back into proceedings, removal proceedings, because that's where you're placed. And if you want to, you may press forward with an asylum application. That's the best we can do at this point. If there are no further questions, that will conclude the government's presentation. Thank you. Thank you. Could you tell me, is it Excerpt 25 where it was outlined the procedures the lawyer was attempting to achieve? I think you told me Excerpt 25. It's actually, I believe it's a, it may be, I'm not sure, it's on Excerpts. It's either, I can't tell which number they're going by. That may actually be, it's got 372 and 25 on it, Your Honor. Yes. It says, answer, application of political asylum was filed around February 25th. That's the approximate order. It's our position that that date is controlling for the purpose of determining which statute applies in this case. That's the lawyer talking? That's the lawyer talking to the judge and giving his theory of how they were in proceedings and not subject to the stop time rule. Thank you. Thank you, Your Honor. A few brief responses, Your Honor. First of all, as to the tactical decision in trying to get them into proceedings before April 1st, the Job Declaration we think is dispositive of that. There was a practical impossibility. And so there was no way that could have happened. I think it's important to focus on what the Board of Immigration Appeals did. The Board of Immigration Appeals only reached one issue, which was that this was a proper tactical decision on the part of the attorney's advice. We believe that's the only issue the court needs to reach because, as the Supreme Court said in Chenery, and this case is held innumerable times, the Court of Appeals, in reviewing the agency's decision, can only affirm that decision based on the reasoning set forth by the agency in the underlying decision. The Board only addressed the issue that this was a reasonable tactical decision. We think that's erroneous, and we think that compels the reversal of that decision. So you're saying that if we were to disagree with that formulation, that we shouldn't go on and try to make a prejudice or other analysis. That should be remanded. Correct, Your Honor. And let the Board do it in the first instance. It has to, under this Court's precedent in Chenery, because the Board didn't reach the prejudice issue. We think there is prejudice here. As I said, the failure to prevent them from filing the application. But we don't think that this Court can go on and say, well, yeah, we agree there was improper advice here, but we don't really see the prejudice. So the Board has to address that in the first issue. We think we've established that, and we set that forth in our briefs. At this point, our cases have said they are the expert on the statute, and we ought to let them go first. The Supreme Court spanked us recently because we decided otherwise. Right. But we usually don't send it back for something they can't handle. And that brings me to the question that Judge McKeown has been asking, and I think it's a good question. I'd like to get your view on it. Due process means process of law. And so usually our due process issues have to do with cases or proceedings within a court. You're extending due process back to out of the court prior to filing to a lawyer's advice. And we're sort of wrestling with does due process, as we understand it, process of the law, extend beyond the courthouse pre-filing to what a lawyer happens to say to clients? Let me address that briefly and also both of your questions or all of your questions about what relief can you ultimately grant. There are several cases, even the Supreme Court in the Haitian refugee case, McNary v. Haitian Refugee Center. In that case, there wasn't a deportation proceeding. It was outside the context of a deportation proceeding where the immigration service, not the attorney, it wasn't an effective since a counsel case, but outside the context of a deportation proceeding to say that there has to be due process. This court in the Walters case, the Ninth Circuit decision on Bonk, again, it wasn't an effective since a counsel case, but there was no deportation proceeding. There, there was an involuntary waiver of the right to a hearing, and this court said that violated due process because the agency's forms didn't properly inform people. It's the same issue here. Here, the attorney didn't properly inform the issue, and due process attaches there. Now, as to the relief that this court can grant, in Castillo-Perez is exactly the case I think this court should look at. What this court said in Castillo-Perez is the, because of the ineffective since a counsel, the petitioner in that case was subject to the stop time rule. There, it was the 309C5 in the transitional rule. Here, it's the stop time rule in the permanent case, but it doesn't, permanent rules, but it doesn't really matter. The stop time rule was in effect, and what this court said, court said is because the absence of counsel made them subject to the stop time rule, we are going to rule that the stop time rule cannot apply. We put them in the position that they would be, but for the ineffective assistance of counsel. In this case, and I want to address Your Honor's question about what do we do, what I believe is the appropriate remedy is that they are in removal proceedings. That was what, if they had given proper advice, they would have been in the 10 years. They apply for cancellation of removal for the higher standard, but the stop time rule can't apply because the ineffective counsel rendered them subject to that, and that's what has to be remedied. And there's two other cases I would cite where the court has applied equitable relief, even absent a due process violation, the Guadalupe Cruz case and the Otorola case. Both of those were government actions. The court did not hold they were due process violations, but the court said those actions subjected the individual to the stop time rule. So we're going to say the stop time rule cannot apply as a matter of equity, and that's what has to happen here. Thank you, Mr. Vanderhoot. The case of Laura Torres v. Ashcroft is submitted. We'll take a brief break, and while we're doing that, so we can get our other judge on the bench, the lawyers for United States v. Hickey can come forward and get set up. Thank you.
judges: Wallace, McKeown, Callahan